COMMONWEALTH vs. HAROLD W. GRAVES.

No. 92-P-479.

Bristol. February 4, 1993. - July 30, 1993.

Present: PERRETTA. IRELAND. & LAURENCE. JJ.

*Rape. Assault by Means of a Dangerous Weapon. Evidence*, Failure to
produce witness, Alibi, Fresh complaint, Recent invention, Verbal com-
pleteness. *Witness*, Unavailability. *Practice, Criminal*, Instructions to
jury, Appeal by Commonwealth, Verdict.

In the circumstances of a criminal case the judge properly gave a "missing
witness" instruction, where the record demonstrated a sufficient founda-
tion to allow the jury to draw an inference adverse to the defendant
from his failure to call alibi witnesses in his defense. [81-87]
At a rape trial, there was no error in the judge's allowing the victim to
read, on redirect examination, the entire five-page handwritten state-
ment she had given to police, where a portion of the statement was
admissible to rebut defense counsel's suggestion of a recent contrivance
and where defense counsel had requested that not just the portion but
the entire statement be read. [87-88]
A verdict of not guilty on an indictment for assault by means of a danger-
ous weapon, a knife, and a verdict of guilty on a companion indictment
for aggravated rape were not inconsistent so as to warrant the judge's
dismissal of the aggravated rape indictment, where there was sufficient
other evidence of assault by means of a different dangerous weapon to
support the verdict of guilty. [88-89]

INDICTMENTS found and returned in the Superior Court
Department on December 14, 1988.

The cases were tried before *George N. Hurd, Jr.*, J.

*Carol A. Donovan*, Committee for Public Counsel Ser-
vices, for the defendant.

*Elspeth B. Cypher*, Assistant District Attorney, for the
Commonwealth.

LAURENCE, J. On the morning of November 2, 1988, a fif-
teen year old girl told Taunton police that an acquaintance,
Harold Graves, had, from the early hours of that morning

until sometime after 7:00 A.M., repeatedly raped her in her sister's apartment. She said that during her ordeal Graves had threatened her with a knife and choked her with his hands and a gold chain she wore around her neck. Graves was informed of her accusation from a friend's telephone call later that afternoon. Although at trial he testified that he had never raped the girl or been in her Taunton apartment that day, but rather had been with friends in his own apartment building in Attleboro from around 9:00 P.M., November 1, until 1:00 or 1:30 A.M., November 2, Graves rejected advice that he turn himself in to the police in order to rebut the accusation. Instead, using an alias and dyeing his hair, he evaded police and a bench warrant for several months thereafter. On December 14, 1988, he was indicted for rape of a child by force, aggravated rape, and assault with a dangerous weapon (a knife). In April, 1989, he was picked up on the bench warrant.

Following a five-day trial in July, 1990, a jury found Graves guilty of rape of a child by force and of aggravated rape but returned a verdict of not guilty on the charge of assault with a dangerous weapon. The trial judge then effectively allowed the defendant's outstanding motion for a required finding of not guilty by dismissing the charge of aggravated rape, on the ground that it was inconsistent with the not guilty verdict as to assault with a dangerous weapon.

Graves contends on appeal that he is entitled to a new trial because (1) the judge committed error in instructing the jury that they could draw inferences unfavorable to him from his failure to call any of the witnesses he claimed could corroborate his alibi; and (2) the judge erroneously permitted the victim to read to the jury the entire contents of her five-page handwritten statement to the police. The Commonwealth has cross appealed, arguing that the judge should not have allowed Graves's motion for a required finding of not guilty as to aggravated rape because the jury's verdict on that charge was not inconsistent with the not guilty verdict as to assault

with a dangerous weapon.[1] We find no error in Graves's conviction on the indictment for rape of a child but reverse the judge's order dismissing the aggravated rape charge as erroneous in light of the sufficiency of the evidence and his instructions to the jury.

1. *Graves's principal assignment of error.* Graves's major appellate issue arises out of his having taken the stand on his own behalf on the fifth day of trial, in response to a strong prosecution case against him. That case was based upon a positive identification of him as the perpetrator by the victim, independent testimony placing him at the scene of the crime, consistent fresh complaint corroboration immediately after the incident, medical evidence confirming the fact of recent sexual intercourse, and police testimony and photographic evidence depicting the physical injuries to the victim. Graves asserted, however, that he was not at the victim's sister's Taunton apartment on the evening in question, but rather was socializing with upstairs neighbors in his Attleboro apartment building until 1:00 or 1:30 A.M. He identified at least five individuals who were with him during that period:

---

[1] Graves argues that the Commonwealth's cross appeal should be dismissed because its notice of appeal was untimely and in any event was filed only as to the indictment for rape of a child, not with respect to the indictment charging aggravated rape. We think, as to the latter argument, that the Commonwealth's appellate reference to the indictment as to which it obtained a jury verdict, instead of the indictment which it believed was erroneously dismissed, was manifestly a clerical error that is correctable by this court in the interest of justice, see Mass.R.A.P. 8(e), 378 Mass. 934 (1979); Mass.R.Crim.P. 42, 378 Mass. 919 (1979), particularly since no confusion or prejudice was caused, or is claimed by, Graves arising from that misstep. See G. L. c. 231, § 119. As to the alleged untimely filing, the Commonwealth's September 28, 1990, notice was filed within thirty days after the imposition of Graves's sentence on August 31, 1990. See Mass.R.A.P. 4(b), 378 Mass. 929 (1979). Even if we disregarded the Commonwealth's affidavit as to the filing of the notice on September 28, 1990 (a Friday), and accepted the docket entry as correctly reflecting the filing on October 1, 1990 (a Monday), we would deem the October 1 filing to be timely in light of Mass.R.Crim.P. 46(a), 378 Mass. 922 (1979) (when the last day of a time period falls on a Sunday, as it did here, the period extends through the next day). See also Mass.R.A.P. 2, 365 Mass. 845 (1974).

Doc, Doc's wife,[2] Joe Laherty, Dave Laherty, and Patty Laherty. None of those individuals was called to testify on his behalf; nor had Graves mentioned their existence prior to his testimony, despite the fact that the prosecution had filed a pretrial motion on October 17, 1989, pursuant to Mass.R.Crim.P. 14(b)(1)(A), 378 Mass. 876-877 (1979), which was allowed, for disclosure of any alibi defense and identification of any alibi witnesses.

During cross-examination, the prosecutor questioned Graves regarding the whereabouts of the five persons he claimed to have been with on the evening of the incident. Graves stated that Joe, Dave, and Patty Laherty had moved to California about five months before trial but he did not know where. Doc and Doc's wife had also supposedly moved, to unknown locations, about the same time.[3] Graves admitted that he had done nothing to attempt to summons any of the five individuals, either for his originally scheduled trial in December, 1989, or for the subsequent actual trial in July, 1990.[4]

The prosecutor devoted but a small portion of her closing argument to suggesting the lack of credibility in Graves's story, as much on account of his prior convictions for forgery, larceny, and breaking and entering in the nighttime (which he had acknowledged during his cross-examination) as his failure to have provided or even contacted the five supposed

---

[2]Graves testified that he did not know the last names of Doc and Doc's wife, although he claimed to have been acquainted with them for two and one-half to three months prior to November, 1988, and for over a year thereafter.

[3]Defense counsel objected to this line of questioning. The objection was overruled. No argument has been made to us concerning that ruling. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[4]At a bench conference, Graves's counsel stated that "I haven't been able to locate those people . . . . [W]e're trying to find Doc and these people, we can't find them." No affidavit was submitted in this regard, nor were any particulars ever provided as to the actual efforts counsel had made or attempted. See *Commonwealth* v. *Spencer*, 212 Mass. 438, 452 (1912). Cf. *Commonwealth* v. *Melendez*, 12 Mass. App. Ct. 980, 981 (1981).

alibi witnesses on his behalf.[5] The judge subsequently in-
structed the jury that, if they were satisfied a proper basis
existed, they could draw an inference adverse to Graves from
his failure to have called the potential alibi witnesses, namely
that their testimony would not have been favorable to him.[6]
Graves's counsel objected to that instruction on the ground
that the prosecution had not established a proper foundation

[5]Graves did not (contrary to the undocumented assertion in his appellate
brief) object to the prosecutor's closing argument in this, or any other,
regard. His assignment of error on the part of the trial judge in permitting
the prosecution to argue that the jury could draw an unfavorable inference
from his failure to produce the alibi witnesses, therefore, can only be re-
viewed under the strict standard of whether the argument created a sub-
stantial risk of a miscarriage of justice. See *Commonwealth* v. *Cobb*, 26
Mass. App. Ct. 283, 287 (1988). Graves's brief is devoid of any discussion
of that standard of review or how it might apply in his case. It therefore
does not rise to the level of acceptable appellate argument and need not be
considered by this court. See Mass.R.A.P. 16(a)(4); *Larson* v. *Larson*, 30
Mass. App. Ct. 418, 428 (1991); *Commonwealth* v. *Taylor*, 32 Mass. App.
Ct. 570, 580 (1992). Moreover, any supposed error was cured by the jury's
being instructed as to arguments of counsel having no evidentiary force.
See *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987); *Commonwealth*
v. *LaFontaine*, 32 Mass. App. Ct. 529, 537 (1992). Finally "the failure of
defendant's counsel to object . . . suggests that the [prosecutor's] remarks
were not sensed, in the setting of the case, as being unfairly prejudicial."
*Commonwealth* v. *Cobb*, 26 Mass. App. Ct. at 287. Even if we addressed
this issue, it would not avail Graves, in light of the discussion *infra*.

[6]The judge's instruction on this issue was as follows:

"Now, if the defendant in this case did not call a potential witness to
testify you are free, not required to, to infer that the witness's testi-
mony would not be favorable to the defendant only if four conditions
are satisfied. First, that the Commonwealth's case against the de-
fendant must be strong. Second, that the absent witness or witnesses
must be expected to offer important testimony supporting the de-
fendant's innocence. Third, that the absent witness must be available
to testify for the defendant. And, fourth, that the witness's absence
must not be explained by any of the other circumstances in the case.
If all four conditions have . . . been met, you are permitted to draw
an inference that the witness's testimony would not be favorable to
the defendant, if you find that to be a reasonable conclusion in all
the circumstances of this case. If any of the four conditions has not
been met, you may not draw such an inference and you should com-
pletely disregard the potential witness's testimony as a factor in this
case."

Graves concedes the correctness of the content of this instruction but ar-
gues that there was an inadequate foundation to warrant its being given.

for a "missing witness" instruction. We conclude that there
was no error.

2. *Propriety of the "missing witness" instruction.* "Where
a party has knowledge of a person who can be located and
brought forward, who is friendly to, or at least not hostilely
disposed toward, the party, and who can be expected to give
testimony of distinct importance to the case, the party would
naturally offer that person as a witness. If, then, without ex-
planation, he does not do so, the jury may, if they think rea-
sonable in the circumstances, infer that that person, had he
been called, would have given testimony unfavorable to the
party." *Commonwealth v. Schatvet*, 23 Mass. App. Ct. 130,
134 (1986). Although whether to give such an instruction is,
in the last analysis, a matter for the trial judge's discretion,
see *Commonwealth v. Franklin*, 366 Mass. 284, 294 (1974);
*Commonwealth v. Figueroa*, 413 Mass. 193, 199 (1992), he
nonetheless "must [first] rule, as matter of law, that there is
a sufficient foundation for such inference in the record."
*Commonwealth v. Vasquez*, 27 Mass. App. Ct. 655, 658
(1989), citing *Commonwealth v. Schatvet*, 23 Mass. App.
Ct. at 135.

Each case, however, must be decided on its own facts.
*Commonwealth v. Franklin*, 366 Mass. at 292-293. There is
no hard and fast rule as to the appropriateness of a "missing
witness" instruction; it "necessarily depends, as with infer-
ences generally, upon the posture of the particular case and
the state of the evidence." *Commonwealth v. O'Rourke*, 311
Mass. 213, 222 (1942).[7] Here, the judge implicitly ruled that

---

[7]Decisions indicating a general approach of judicial caution, delicacy,
and circumspection with respect to giving a "missing witness" instruction
and enjoining its use in only "clear" cases are inapposite to Graves's situa-
tion. The admonitions in those cases arose out of concern that the infer-
ence "may come uncomfortably close to invading [the defendant's] consti-
tutional rights" against self-incrimination, to decline to testify, and to put
the prosecution to its burden of proving him guilty beyond a reasonable
doubt. See *Commonwealth v. Schatvet*, 23 Mass. App. Ct. at 135 & n.10.
Here, however, such concerns are not implicated. Graves not only put on a
lengthy defense by way of witnesses but also testified on his own behalf.
He thereby "opened the issue of his credibility and was subject to scrutiny
on that ground." *Commonwealth v. Bryer*, 398 Mass. 9, 12 (1986).

the necessary foundation existed for the instruction, a ruling which was amply supported by the evidence. No abuse of discretion occurred because the record reveals the presence of the most significant factors discussed in the cases as pertinent considerations for determining to give such an instruction.[8]

First, the Commonwealth's case against Graves was strong. See *Commonwealth* v. *Franklin,* 366 Mass. at 293. He was unequivocally identified as the rapist by the victim, who had known him for five years. Graves conceded that he had no explanation why she might lie about her accusation. He was placed at the scene of the crime by the unrebutted eyewitness testimony of the victim's brother, who contemporaneously observed the physical injuries to her neck inflicted by Graves's choking her during the sexual assault. Those physical injuries were shortly thereafter observed and photographed, and later testified to, by the police. The victim immediately described the incident to her brother, her mother, a police officer, and a nurse, all of whom gave proper and corroborative "fresh complaint" testimony, which confirmed the victim's depiction of Graves as having choked her and physically threatened her with a knife while he raped her. That very knife was produced and identified during trial. Prompt physical examination of the victim revealed the presence of seminal fluid in her vagina and on her clothing. Finally, despite learning of the victim's charges against him the very day of the incident, Graves chose not to try to exonerate himself but instead eluded the authorities, under disguise and an assumed name, for many months, thereby displaying consciousness of guilt. "Faced with that evidence, the defendant would naturally be expected to call as . . . witness[es] the friend[s] with whom he claimed he was at the time" of

---

[8]There is no merit to Graves's attempt to benefit from the prosecutor's initial argument to the judge (during a bench conference regarding the propriety of her cross-examination inquiry into Graves's not having called the alibi witnesses) that no foundation had to be established because her argument was that "these people never existed." By the time the judge gave the "missing witness" instruction attacked in this appeal, a proper foundation for the instruction existed in the record, as discussed *infra.*

the crime of which he stood accused. *Commonwealth* v. *Melendez*, 12 Mass. App. Ct. 980, 981 (1981).

Second, the purported evidence of the missing witnesses was neither unimportant, collateral, nor cumulative, but rather central to Graves's alibi defense. See *Commonwealth* v. *Smith*, 342 Mass. 180, 186-187 (1961); *Commonwealth* v. *Niziolek*, 380 Mass. 513, 520 (1980); *Commonwealth* v. *Happnie*, 3 Mass. App. Ct. 193, 195-196 (1975); *Commonwealth* v. *Melendez*, 12 Mass. App. Ct. at 980-981; *Commonwealth* v. *Gagliardi*, 29 Mass. App. Ct. 225, 243-244 (1990). Contrast *Commonwealth* v. *Fulgham*, 23 Mass. App. Ct. 422, 426-427 (1987) (missing witnesses' testimony would be merely cumulative); *Commonwealth* v. *Vasquez*, 27 Mass. App. Ct. at 659 (missing witness not critical to any issue in case); *Commonwealth* v. *Calcagno*, 31 Mass. App. Ct. 25, 29 (1991) (missing witness had no significant evidence).

An additional important factor satisfied here was "whether the defendant has superior knowledge of the identity of the witness[es] and [their] whereabouts." *Commonwealth* v. *Franklin*, 366 Mass. at 293. Graves conceded that he was aware of the five alibi witnesses' identity and location for some fifteen months after he was accused by the victim (and for over thirteen months after he was indicted) and had even attempted to procure a statement (unsworn) from one of them to corroborate his alibi prior to his originally scheduled trial. His knowledge of those witnesses' whereabouts was demonstrably superior to that of the Commonwealth, which was unaware even of their existence, notwithstanding its pretrial motion for alibi disclosure under Mass.R.Crim.P. 14(b)(1)(A), until Graves took the stand at the end of the trial to assert his alibi. (Had Graves properly notified the Commonwealth of the alleged alibi witnesses' identities, as was his obligation, the prosecution would have had an opportunity to locate them, for the benefit of both parties.)

Finally, the evidence justified the judge's implicit discretionary determination that Graves had not furnished a "plausible reason," in the light of "ordinary logic and experience," for nonproduction of the witnesses. See *Commonwealth* v.

*Gagliardi*, 29 Mass. App. Ct. at 244. Stated otherwise, the evidence did not satisfactorily establish the missing witnesses' unavailability to Graves.

> "Availability does not necessarily mean proof of actual physical whereabouts. Otherwise, a defendant by fabricating the existence of a witness could always preclude [an adverse] comment [or instruction]. What is meant by availability is 'the likelihood that the party against whom the inference is to be drawn would be able to procure the missing witness' physical presence in court . . . .'"

*Commonwealth* v. *Melendez*, 12 Mass. App. Ct. at 981, quoting from *Commonwealth* v. *Happnie*, 3 Mass. App. Ct. at 197. Graves claimed that the witnesses had moved away (three to California and two to an unknown location) a few months before trial and that he had no idea where they were. The Commonwealth's cross-examination established, however, that he had done nothing to attempt to locate them or summons them into court, even though invocation of G. L. c. 233, § 13B (which permits the issuance of subpoenas to compel the presence of out-of-State witnesses from States that have a similar law, of which California is one, see Cal. Penal Code §§ 1334-1334.6 [West 1982 & Supp. 1993]), was available to him — as were Mass.R.Crim.P. 17, 378 Mass. 885-887 (1979), and G. L. c. 233, §§ 1-6, authorizing summonses for the attendance of necessary witnesses (prior to the originally scheduled trial while all of the witnesses were still in the Attleboro apartment building); Mass. R.Crim.P. 10, 378 Mass. 861-862 (1979), authorizing continuances for cause and in the interest of justice; and Mass.R.Crim.P. 35, 378 Mass. 906-909 (1979), authorizing pretrial preservation of witness testimony by deposition.[9]

---

[9]Graves's counsel orally represented at a bench conference that unspecified unavailing efforts to locate the witnesses had been taken, but no affidavits or other sworn statements detailing either the nature or the extent of such efforts on the part of Graves, his counsel, or anyone else were provided. Counsel's unsworn remark was not even alleged to be based upon his personal knowledge and was insufficient to preclude instruction as to

Graves manifestly undertook little, if any, effort to locate the alibi witnesses in advance of trial,[10] and his failure to have exercised reasonable diligence in that respect is fatal to his contention on appeal.

> "The defendant may always relieve himself from any unfavorable inference [based upon his failure to call an important witness on his behalf] by showing that by reason of sickness or absence of the desired witness or from any other cause he has been unable to produce him; *but he is to be held to reasonable effort to produce the witness, and in the absence of any evidence of such effort the rule [allowing unfavorable comment or a missing witness instruction] applies*" (emphasis added).

*Commonwealth* v. *Spencer*, 212 Mass. 438, 452 (1912). Cf. *Commonwealth* v. *Buonopane*, 9 Mass. App. Ct. 651, 658-659 (1980) ("There is nothing in the record which indicates that the defendant attempted to summon the witness, that [the witness] was unavailable to a defense summons, or that the witness ignored such process" [citations omitted]); *Commonwealth* v. *Childs*, 31 Mass. App. Ct. 64, 68 (1991) (A witness is not "unavailable" for purpose of introducing his prior recorded testimony at trial unless there has been evi-

---

the adverse inference. Cf. *Commonwealth* v. *Melendez*, 12 Mass. App. Ct. at 980-982.

[10]During Graves's cross-examination, the prosecutor showed him a letter he had written to a Kenny Gilmour while awaiting trial, which stated in part: "I need a favor. My only witness has taken off to California because of warrants. But I want insurance and I've got $1,500 to buy it with. Let me know one way or the other soon." The prosecutor suggested that by this letter Graves sought Gilmour's help in threatening or harming the complaining witness. Graves protested that he intended the $1,500 "insurance" to be used by Gilmour to go to "Foothills [California] and find Joseph Laherty" (although neither Laherty nor Foothills was mentioned in the letter); but stated that Gilmour never got back to him. Graves does not discuss this curious, ambiguous incident on appeal or suggest that it reflected diligence on his part in attempting to locate the missing witnesses.

dence of "a good faith effort to produce the witness at trial").[11]

"It is the judge's role . . . to determine whether an inference adverse to the non-calling party is warranted in the circumstances explained by counsel. . . . The determination called for is an exercise of judgment, reversible only if manifestly unreasonable. Here it was reasonable." *Commonwealth* v. *Gagliardi*, 29 Mass. App. Ct. at 244. Yet, even had that determination and the consequent instruction been erroneous, the error would have been harmless and nonprejudicial to Graves on this record. Cf. *Commonwealth* v. *Zagranski*, 408 Mass. 278, 288-289 (1990). As indicated above, the Commonwealth's case against him was strong and not dependent solely upon the victim's credibility, as he alleges. Moreover, his own credibility was independently damaged by evidence of his stratagems to evade the police for several months following the victim's accusation; by the prosecutor's use of several prior criminal convictions to impeach him during cross-examination; and by the evidence of the letter in which he sought a "favor" from a friend that could have been construed unfavorably by the jury as attempted witness intimidation and might well have been deemed inconsistent with his claim to have five alibi witnesses. See *supra*, note 10. Additionally, the judge's correct instructions as to the Commonwealth's fixed burden of proof, the presumption of innocence, reasonable doubt, the nature of inferences, and

---

[11]Graves argues that his counsel presented a plausible reason for not calling one of the missing witnesses, Joseph Laherty, during a bench conference, namely the existence of "outstanding warrants" against Laherty. See *Commonwealth* v. *Franklin*, 366 Mass. at 294 ("A witness may be withheld because of his prior criminal record, or because he is susceptible to cross-examination on collateral issues, or for other tactical reasons"). The record reveals, however, not only that no sworn particulars were offered as to whether the "outstanding warrants" translated into a "prior criminal record," but also that Graves's counsel was not providing a tactical reason for the nonproduction of Joseph Laherty but merely attempting to rebut the prosecutor's suggestion that the five missing witnesses did not exist. Even if this had constituted an adequate explanation for not calling Joseph Laherty, it did not encompass any of the other four critical alibi witnesses.

the absence of any obligation on the defendant to call any witnesses or to produce any evidence adequately protected Graves's rights.

3. *Allowance of the victim's reading of her written statement to the police.* There is no merit to Graves's contention that the judge committed error in allowing the victim to read, on redirect examination, the entire five-page handwritten statement she had made for the police shortly after the incident. Defense counsel had, in cross-examination, obtained the victim's admission that her written statement did not mention a fact she had testified to on direct examination, that Graves had held a knife to her throat during the rapes. The prosecutor properly attempted to rehabilitate her on redirect by asking her to read a passage from her statement that mentioned that Graves "had the knife and said 'I'd rather kill you than be on the run.' " The prosecutor was entitled to show the jury that her statement had indeed contained references to a knife in the context of Graves's assaults on her, in order to rebut defense counsel's suggestion that her testimony about the knife was a recent contrivance intended to strengthen the Commonwealth's case against Graves. See *Commonwealth v. Darden*, 5 Mass. App. Ct. 522, 527-529 (1977).

The test in such matters is one of probative value. In deciding whether a prior consistent statement has a logical tendency to meet and counter the suggestion of contrivance, we defer to the discretion of the trial judge, "who is in a better position than an appellate court to evaluate the subtleties and nuances of the trial and who consequently should not be reversed for admitting or excluding such testimony except where it is clearly shown that his ruling is outside the proper boundaries of discretion. Such a showing has not been made in this case." *Id.* at 530. Nor could it be, since the statement was read in its entirety at the request of and to accommodate Graves's counsel.

Moreover, the reading of the statement was admissible, as argued by the prosecutor, both under the "doctrine of completeness," see *Commonwealth v. Watson*, 377 Mass. 814,

829 (1979); Liacos, Massachusetts Evidence 443 (5th ed. 1981), and as fresh complaint. See *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. 622, 625 (1987); *Evans* v. *Multicon Constr. Corp.*, 30 Mass. App. Ct. 728, 741 (1991). Contrary to Graves's argument, there is "no rule requiring the exclusion of a victim's written fresh complaint, and we can think of no reason why the admissibility of such evidence should turn on whether the complaint was written or oral." *Commonwealth* v. *Lanning*, 32 Mass. App. Ct. 279, 286 (1992) (citation omitted). We also cannot think of any principled reason why such a statement may not be read by the complainant herself rather than by a police witness, as in *Commonwealth* v. *Lagacy*, *supra*. Graves's naked assertion to the contrary is unsupported by any authority and is particularly wide of the mark in view of his counsel's explicit request of the judge to "let her [the victim] read the whole thing," rather than just the portion to which the prosecutor had directed her attention.

4. *The Commonwealth's cross appeal.* We agree with the Commonwealth that the judge erred as matter of law in setting aside the jury verdict of guilty on the charge of aggravated rape. Contrary to the judge's observation, that verdict of guilty was not legally inconsistent with the verdict of not guilty on the charge of "assault . . . by means of a dangerous weapon, to wit: a knife." Inconsistency of verdicts in criminal cases is not a matter for judicial inquiry unless the inconsistent verdicts are impossible as matter of law. See *Commonwealth* v. *Harrison*, 25 Mass. App. Ct. 267, 270 n.3 (1988). No such impossibility existed here. The jury were correctly instructed that assault with a dangerous weapon was an element of the aggravated rape indictment under G. L. c. 265, § 22(*a*). The judge also accurately informed the jury that:

> "[A]n item is a dangerous weapon if it is used in a way that it reasonably appears to be capable of causing injury or death to another person. Items used for innocent purposes can become dangerous weapons, naturally, when they're used to produce serious injury or death or used in a way that they reasonably appear likely to do

so. An example we give is one of the lighted cigarette if used inappropriately, or somebody that takes a pencil and aims it at someone['s] eye."

See Nolan & Henry, Criminal Law § 323 (2d ed. 1988). At no time during his instruction with respect to aggravated rape did the judge specify that the "dangerous weapon" element of the crime could only be proved if the jury found Graves guilty of the indictment charging "assault and battery with a dangerous weapon, to wit: a knife." Nor did he expressly restrict the jury's consideration of the "dangerous weapon" aspect of the aggravated rape charge to a knife. Consequently, under the instructions, the jury, who had heard extensive testimony regarding Graves's choking of the victim with the gold rope chain around her neck throughout the sexual assault — so hard that she "couldn't really breathe" — and regarding the bruises on her neck resulting from the choking, could properly find Graves guilty of the crime of rape aggravated by his choking of the victim with the chain, independently of the charge of assault with a knife.

The judge's sua sponte ruling that the two verdicts were inconsistent on their face was based upon his mistaken impression that the weapon element of aggravated rape could only be satisfied by a finding of assault with a knife. He overlooked, and unjustifiably overrode, his correct and reiterated reminders to the jury that it was their memory of the evidence that controlled, not his or that of counsel.[12] His apparent determination that the evidence was insufficient to prove Graves's guilt of aggravated rape was incorrect on this record and under the applicable principles governing motions for required findings. See *Commonwealth* v. *Doucette*, 408 Mass. 454, 455-462 (1990).

---

[12]The jury were asked by the judge to "clarify" their assault and aggravated rape verdicts after he explained to them his concern about the "apparent" inconsistency in the verdicts. After a short deliberation, the jury returned and reaffirmed their verdict of not guilty on the assault with a dangerous weapon charge but guilty as to the aggravated rape indictment.

5. *Conclusion.* The judgment on the guilty verdict as to rape of a child by force is affirmed. The order dismissing the aggravated rape indictment is vacated, and the jury verdict of aggravated rape is reinstated. Sentence thereon is to be imposed in the Superior Court.

*So ordered.*