COMMONWEALTH *VS.* GERMAINE MATTHEWS.

No. 98-P-2003.

Suffolk. December 14, 1999. - June 8, 2000.

Present: JACOBS, PORADA, & GREENBERG, JJ.

*Practice, Criminal,* Instructions to jury. *Evidence,* Failure to produce witness.

At the trial of an indictment in which the judge gave a missing witness instruction, requested by the prosecutor and based on *Commonwealth* v. *Graves*, 35 Mass. App. Ct. 76, 80 n.6 (1993), no substantial risk of a miscarriage of justice arose from the judge's failure also to instruct using the specific reasonable doubt language suggested in *Commonwealth* v. *Olszewski*, 416 Mass. 707, 724 n.18 (1993), cert. denied, 513 U.S. 835 (1994), in light of the judge's instructions repeatedly advising the jury of the Commonwealth's burden to prove the defendant's guilt beyond a reasonable doubt. [367-369]

INDICTMENT found and returned in the Superior Court Department on May 24, 1995.

The case was tried before *Vieri Volterra*, J.

*Jennifer M. Staples* for the defendant.

*Dean A. Mazzone*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. A jury in the Superior Court found the defendant guilty of assault and battery by means of a dangerous weapon. On the morning of the last day of trial, the prosecutor notified the judge and defense counsel that she wanted a "missing witness" instruction. The judge instructed the jury conformably with the language approved in *Commonwealth* v. *Graves*, 35 Mass. App. Ct. 76, 80 n.6 (1993).[1] No objection to the charge

---

[1] In the face of a timely request for the instruction, the judge charged the jury as to the missing witness evidence thus:

"If a defendant in a case does not call a potential witness to testify, you are free to infer that the witness's testimony would not be favorable to the defendant, but you may only draw this inference if four

was made by the defendant. The defendant contends that the jury instruction was flawed because the judge failed to instruct the jury that they should not draw an adverse inference against the defendant for failure to call a witness unless they were convinced of the truth of the inference beyond a reasonable doubt. See *Commonwealth* v. *Olszewski*, 416 Mass. 707, 724 n.18 (1993), cert. denied, 513 U.S. 835 (1994); *Commonwealth* v. *Johnson*, 39 Mass. App. Ct. 410, 413 (1995). We examine the defendant's contentions to ascertain whether the failure created a substantial risk of a miscarriage of justice.

To place the matter in context, we sketch certain facts from the testimony of several witnesses. There was bad blood between the defendant and the victim, Robinson Vargas. Argument about a woman nearly burst into a fight, with Vargas brandishing a knife. Friends separated them, and it came to nothing. On a second occasion, April 30, 1995, Vargas approached a bus stop on Archdale Street in the Roslindale section of Boston to pick up his friend's nine year old daughter from a nearby school. There he encountered the defendant, who was walking in the opposite direction on the same side of the street. A "hard look" was exchanged. As Vargas walked the girl back to her house, the defendant came up to him with one hand inside his sweatshirt pocket. Vargas sent the girl inside because he "knew something was going to happen." Here there is a critical divergence of the protagonists' accounts of what occurred. In his testimony, Vargas claims that the defendant attacked him without provocation, stabbing him while he held his hands in mid-air to indicate that he did not want to fight. In his testimony, the defendant had Vargas as the aggressor, punching him twice and pulling a knife. According to the defendant, it

conditions are satisfied: first, the Commonwealth's case against the defendant must be strong; secondly, the absent witness must be expected to offer important testimony supporting, corroborating the defendant's innocence; third, the absent witness must be available to testify for the defendant; and fourth, the witness's absence must not be explained by any other circumstance in the case.

"If all four conditions have been met, you are permitted to draw an inference that the witness's testimony would not be favorable to the defendant if you find that to be a reasonable conclusion in all of the circumstances of this case. If any of the four conditions have not been met, you may not draw such an inference, and you should completely disregard the potential witness's testimony as a factor in this case."

was only after Vargas displayed a knife that he followed suit, and only after Vargas stabbed him in the arm that he answered with his knife to Vargas's stomach. Finally, the defendant testified that he immediately retreated, taking refuge in his house, where his aunt tended to his wounded arm.

To prove that the defendant did not act in self-defense, the government relied on Vargas's version of events. Because the defendant testified that his aunt had ministered to his arm, the government requested a jury instruction on the significance of his failure to call her as a witness. The prosecutor was explicitly inviting the jury to infer (and the same invitation became explicit in the judge's charge) that the defendant refrained from calling her as a witness because he knew that she would not corroborate his testimony.

The inference permitted by the failure to call a witness whose testimony would be particularly helpful to a party is a strong one. In a criminal case, it may act as a substitute in part for direct evidence of guilt. However, "courts, both trial and appellate, should proceed with extreme care in determining whether the evidence sufficiently establishes a basis for the inference. Cautious vigilance must be maintained against the employment of a naked legal principle in a factual setting which provides no reasonable basis for the principle's application. On the other hand, the jury must not be *unduly* inhibited in its search for truth; it must be permitted to draw *fair* and *reasonable* inferences from creditable evidence" (emphases original) (footnote omitted). *Hale* v. *United States*, 410 F.2d 147, 150 (5th Cir.) (referring to inference, from unexplained possession of stolen property, of knowledge property stolen), cert. denied, 396 U.S. 902 (1969). See *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134 (1986) (inference regarding missing witness should be invited "only in clear cases, and with caution"); *Commonwealth* v. *Rodriquez, post* 370 (2000); *Commonwealth* v. *Spencer, post* 383 (2000).

In the *Olszewski* case, the Supreme Judicial Court stated that, once the Commonwealth fairly raises the missing witness issue, the judge should instruct the jury "that [they] should not draw an adverse inference from the defendant's failure to call a certain witness unless they were persuaded of the truth of the inference beyond a reasonable doubt." *Commonwealth* v. *Olsze-*

*wski,* 416 Mass. at 724 n.18.[2] The problem posed by this case is not easily resolved. The gist of the defendant's claim is that the judge gave the basic charge recommended in *Commonwealth* v. *Graves,* 35 Mass. App. Ct. at 80 n.6, but failed to couple it with the specific reasonable doubt language suggested in *Olszewski.* Left unclear, however, was the question what the consequences are — if any — of the omission of the specific reasonable doubt language in context of the instruction. The *Olszewski* court found no substantial risk of a miscarriage of justice. See *id.* at 724 n.18.

In *Commonwealth* v. *Thomas,* 429 Mass. 146, 149 n.1 (1999), the trial judge instructed the jury that the inference is permis-

---

[2]We pause briefly to note that the *Olszewski* court relied on *Commonwealth* v. *Niziolek,* 380 Mass. 513, 522 (1980), for the proposition that the inference must be proven beyond a reasonable doubt. In the Commonwealth's brief to this court, appellate counsel correctly points out that the *Niziolek* court cited *Gilbert* v. *State,* 36 Md. App. Ct. 196, 208 (1977), as the source of the reasonable doubt language but that the *Gilbert* case itself did not involve a missing witness instruction. Rather, the court in *Gilbert* made the statement in the context of addressing a situation in which Gilbert, convicted of murdering her husband, had produced sufficient evidence to raise the issues of self-defense and provocation. A modicum of evidence on such an issue will serve to dissipate the presumption that a homicide is not justified, but Gilbert argued that dissipation of the presumption not only operated to create a jury issue, but also in fact stripped the State's case of its legal sufficiency so as to have required the judge to grant a judgment of acquittal as a matter of law. See *id.* at 205. The court then responded: "The possibility of such an inference being drawn does not impose an unconstitutional burden upon a defendant. The State still bears the burden of persuasion beyond a reasonable doubt. The fact finder need not draw the permitted factual inference." *Id.* at 208. Then appears the sentence which was extrapolated in the *Niziolek* decision: "*In a jury case, the defendant is entitled to an appropriate instruction telling the jury that they should not so infer [that the defendant acted without justification] unless they are persuaded of the truth of the inference beyond a reasonable doubt*" (emphasis supplied). *Gilbert* v. *State,* 36 Md. App. Ct. at 208.

It is clear from this context that the *Gilbert* court meant only that the defendant is entitled to a reasonable doubt instruction with respect to an inference that is an element of the crime. This is also the law in Massachusetts. See, e.g., *Commonwealth* v. *Poillucci,* 46 Mass. App. Ct. 300, 305 (1999).

The *Olszewski* decision also implies the Commonwealth must prove the subsidiary facts of an evidentiary inference beyond a reasonable doubt. See *Commonwealth* v. *Olszewski,* 416 Mass. at 724 n.18. This is an issue that needs further clarification, as well. See *Commonwealth* v. *Lawrence,* 404 Mass. 378, 394 (1989) (defendant not entitled to instruction that, in order to draw inferences, Commonwealth must prove subsidiary facts beyond a reasonable doubt).

sible "if [the jury finds] beyond reasonable doubt that to be a reasonable conclusion . . . ." That instruction passed muster. See *id.* at 153-154. In *Commonwealth* v. *McQuade*, 46 Mass. App. Ct. 827, 833 n.3 (1999), a case which held that the judge did not abuse his discretion in providing a *Graves*-type missing witness instruction to the jury, we noted that "[t]he defendant's additional objection that the instruction itself was defective because of the judge's failure to say in it that the truth of the inferences had to be proved beyond a reasonable doubt (which he did not raise at trial) has no merit. In light of the correctness of the judge's overall charge, including his repeated references to the Commonwealth's burden of proving every fact beyond a reasonable doubt, . . . no substantial risk of a miscarriage of justice was created."

The missing witness instruction in this case also posed no substantial risk of a miscarriage of justice. "[T]he law does not require repetition of the same thought at each turn," *Commonwealth* v. *McLeod*, 394 Mass. 727, 739, cert. denied sub nom. *Aiello* v. *Massachusetts*, 474 U.S. 919 (1985), quoting from *Commonwealth* v. *Doucette*, 391 Mass. 443, 452 (1984), and, prior to giving the missing witness instruction, the judge had instructed the jury that they "may draw inferences and conclusions only through facts that have been proved in the case beyond a reasonable doubt." The judge in the course of his general instructions repeatedly advised the jury that the Commonwealth had the burden to establish the defendant's guilt beyond a reasonable doubt. See *Commonwealth* v. *Olszewski*, 416 Mass. at 724 n.18; *Commonwealth* v. *Johnson*, 39 Mass. App. Ct. at 413.

*Judgment affirmed.*