Greco, PJ.
Advanced Spine Centers, Inc. (“Advanced Spine”) brought this suit against Commerce Insurance Company (“Commerce”) seeking Personal Injury Protection (“PIP”) benefits in the amount of $3,240.00, which represented its bills for chiropractic services rendered to Noun Meas (“Meas”). The complaint alleged that Meas was a passenger injured in an accident while in a vehicle insured by Commerce. After a jury trial, judgment was entered for Advanced Spine in the above amount, along with attorney’s fees in the amount of $13,925.94. On this appeal, Commerce argues that the trial judge erred in (1) “relieving [Advanced Spine] from presenting affirmative evidence at trial to meet its burden of proof,” (2) allowing into evidence medical records submitted under G.L.c. 233, §79G by way of an affidavit of its keeper of records, (3) refusing to provide to the jury a missing witness instruction, (4) denying its request to enter into the record subpoenas served on the alleged missing witness, and (5) awarding Advanced Spine’s attorney excessive and unreasonable fees. We discuss these issues in the context of how they arose in the trial court.
1. Medical records. Prior to trial, Commerce filed a motion in limine asking the court to exclude portions of the medical records that Advanced Spine sought to be admitted into evidence pursuant to G.L.c. 233, §79G. Those records related to the treatment of Meas by two different chiropractors employed by Advanced Spine, Ritesh Patel (“Patel”) and Brian Culliney (“Culliney”). Commerce argued that the records contained inadmissible hearsay, and that they did not contain the proper attestations. Attached to these medical records was an affidavit by Gaynor Kohn (“Kohn”), who identified himself as Advanced Spine’s keeper of the records. He certified that the records were the “reports and bills for Noun Meas.” Kohn further stated that the “treating chiropractors determined all of the treatment was necessary and causally related to the patient’s accident on 06/28/08 and all of the charges for the services rendered were fair and reasonable.” Within the records were forms reflecting each day’s service performed and the nature of the service provided. On each of those forms, the provider of the service, be it Patel or Culliney, certified that he was “an authorized representative” of Advanced Spine, and that the record was “a *166 true, accurate and complete record of the reasonable and necessary medical services rendered to [Meas] pertaining to injuries sustained” on June 28,2008. They each then signed their name under the attestation, “Subscribed and sworn to by me on this date under the pains and penalties of perjury.”
Pursuant to G.L.c. 233, §79G, medical bills and reports that are “subscribed and sworn to under the penalties of perjury by the physician... rendering such services ... shall be admissible as evidence of the fair and reasonable charge for such services or the necessity of such services or treatments.” Under the statute, a chiropractor is considered a physician. Id. See also Mass. G. Evid. §803(6) (C) (i) (b), at 254 (2012). In Ortiz v. Stein, 31 Mass. App. Ct. 643 (1991), the Appeals Court rejected the argument that “the scope of §79G [was] sufficient to include the opinion ‘report’ of a physician as to proximate cause without regard to whether the physician treated or examined the person claiming injury,” stating that such a position was an “inventive interpretation [that] places impossible strain upon the plain language of §79G... [and] also runs counter to the purpose of that statute.” Id. at 645. In the case at bar, there is no indication that the affiant, Kohn, was a physician or a chiropractor. He identified himself only as a keeper of the records. In these circumstances, Commerce maintains that he had no personal knowledge of the necessity of the treatment, thereby rendering the attached records inadmissible hearsay. However, we see nothing in §79G that would preclude a keeper of the records from collecting various records that individually contained the requisite attestations by the treating chiropractor and submitting them as one document.
2. Evidence at trial. The plaintiff, Advanced Spine, presented no witnesses, but relied exclusively on Commerce’s answers to interrogatories and its medical records. As to the answers, Commerce admitted that it was “the automobile insurance carrier providing ... [PIP] coverage ... for the injured person [Meas] with regard to the accident alleged in [Advanced Spine’s] complaint”; that it was notified of the accident “on or about June 28, 2008”; that Advanced Spine submitted bills in the amount of $4,835.00 for services it rendered to Meas; and that, of that amount, Commerce paid only $1,595.00. The only other evidence presented by Advanced Spine were medical records referred to above. With that, Advanced Spine rested. Commerce then moved for a directed verdict, which was denied.
In response, Commerce presented two witnesses. Zing Ding testified that she was the adjuster assigned to this claim. When she received Advanced Spine’s bills, she referred them to Dr. Stephen Leonti (“Leonti”) for review. Leonti testified that, in his opinion, based on his review of Advanced Spine’s records and other information he received, the treatment rendered by Advanced Spine through August 14,2008 would have been “customary and reasonable” for a man of Meas’ age “who basically sustained uncomplicated muscular strains related to the vehicular incident” at issue in this case. Thus, Leonti concluded that Commerce’s prior payment of only $1,595.00 was justified.
To prevail, Advanced Spine had to prove that (1) an accident occurred, (2) the injuries suffered by Meas and his treatment were causally related to the accident on June 28,2008, (3) the vehicle Meas occupied was insured by Commerce and that the policy was in effect on June 28th, and (4) Commerce had not paid the full amount due for the treatment provided by Advanced Spine. See Provenzano v. Arbella Mut. Ins. Co., 2007 Mass. App. Div. 46, 47. While the evidence presented by Advanced *167 Spine was rather sparse, it did cover these elements. “Answers to interrogatories, if properly admitted at trial, are evidentiary admissions that may be considered by the fact finder.” Id. at 48. See also General Elec. Co. v. Board of Assessors of Lynn, 393 Mass. 591, 603 n.8 (1984) (“Answers to interrogatories in the same case constitute evidentiary, not judicial, admissions.”). In this case, Commerce’s answers supplied evidence of the first three elements noted above. A further inference as to those elements can be drawn from Commerce’s payment of $1,595.00 of the bills. Moreover, the substance of Commerce’s answers would have been based on its own institutional knowledge. Finally, the medical records were evidence, whether believed or not, that all the treatment was reasonable and necessary and that Advanced Spine was due the remaining amount sought In these circumstances, the court did not err in denying Commerce’s motions for a directed verdict, both after Advanced Spine presented its evidence and after the close of all the evidence.
3. Missing witness. Before closing arguments, Commerce sought a “missing witness” instruction applicable to Culliney. The motion was denied, apparently without any discussion at that point.[1] The instruction was not given. However, the prospect of Culliney’s testimony was discussed at length before the trial began. Culliney was one of two chiropractors who treated Meas. Patel initially treated him for a short period, from July 9, 2008 to July 24, 2008. All of the bills generated by Patel were within the $1,595.00 paid by Commerce. Thereafter, until December 15, 2008, Culliney treated Meas. Thus, all the challenged bills related to Culliney’s treatment. At the pretrial discussion, Commerce’s attorney recounted his unsuccessful efforts to serve Culliney with a subpoena,[2] thereby limiting his right, as provided in G.L.c. 233, §79G, to cross-examine Culliney “with respect to such bill, record and report or to rebut the contents thereof.” Advanced Spine’s attorney stated that Culliney was no longer employed by Advanced Spine, and that he may be living in Kentucky. Commerce also argued that Advanced Spine’s attorney should be able to accept the subpoena since he was representing Culliney in an unrelated civil action in the Federal Court.
“[WJhether to give a missing witness instruction is a decision that must be made on a case-by-case basis, in the discretion of the trial judge. That decision will be overturned on appeal only if it was ‘manifestly’ unreasonable.” Commonwealth v. Thomas, 429 Mass. 146, 151 (1999), quoting Commonwealth v. Graves, 35 Mass. App. Ct. 76, 86 (1993). Among the factors to be considered are “whether the evidence to be given by the missing -witness is important, central to the case, or just collateral or cumulative” and “whether the party who fails to call the witness has superior knowledge of the whereabouts of the witness.” Commonwealth v. Rollins, 441 Mass. 114, 118 (2004), quoting Commonwealth v. Alves, 50 Mass. App. Ct. 796, 802 (2001). See also *168 Mass. G. Evid. §1111, at 370 (2012). In this case, neither party appeared to know where Culliney could be found. The trial judge could have also considered that Commerce was able to present evidence concerning the necessity of the treatment through its witness, Leonti. Thus, Commerce had a live witness who testified that the treatment at issue here was not necessary. In these circumstances, it cannot be said that the trial judge abused his discretion in not giving the instruction sought, or in not admitting the subpoenas into evidence.
4. Burden shifting. After closing arguments, the trial judge instructed the jury as follows concerning the burden of proof:
To recover its claim for personal injury protection benefits, the Plaintiff must prove that the patient received reasonable and necessary medical treatment for the injuries sustained for the term necessary. I mean that the treatment underlying Plaintiff’s medical expenses, or a patient’s medical expenses legitimately arose out of the injury claimed by the patient and by extension the Plaintiff. The fact that the bills were incurred and submitted does not necessarily mean that they were reasonable and necessary. The requirement is satisfied if it is shown that the treatment was rendered by a competent provider and representative of a bona fide effort to alleviate and ameliorate the injury rather than some other purpose such as supporting a lawsuit....
Neither party objected to the charge. Nor was there an objection to the verdict slip presented to the jury, which asked the question, “Did Advanced Spine prove that Commerce failed to pay all of its reasonable medical bills for necessary chiropractic treatment rendered to Noun Meas?” While the judge did not list the elements as done in Provenzano, the issues were clear. There was no shifting of the burden of proof.
5. Attorney’s fees. After trial, Advanced Spine’s counsel sought attorney’s fees in the amount of $13,662.50[3] for services performed by himself and an associate. Commerce argued that the fee was excessive primarily in view of the amount recovered, to wit, $3,240.00. It did not quarrel with the hourly rate charged by the two attorneys. The “amount of damages involved [and] the result obtained” are only two of several factors a judge must consider. Linthicum v. Archambault, 379 Mass. 381, 389 (1979).
Under all the Linthicum factors, we cannot say that the trial judge abused his discretion in making his award. However, we remand this matter to the trial court for clarification and possible correction. Exhibit A attached to counsel’s affidavit indicates that he is seeking compensation for two separate eight-hour periods for the court appearances of his associate on August 4, 2010. If, in fact, this was a duplication, the fee award would have to be reduced by $2,000.00.
Accordingly, other than the above clarification, the judgment of the trial court is affirmed.
So ordered.

 The trial judge also denied Commerce’s motions to hold Culliney in contempt; to issue a capias for his arrest, or in the alternative, to continue the trial; to admit into evidence copies of subpoenas sent to Culliney; and to require Culliney to appear at the hearing related to the G.L.c. 93A count.

 One of the subpoenas was left with Culliney’s wife, another received by his son “for” his father. However, there was no evidence that Culliney was living with his family at the time.

 The amount was ultimately increased to $13,925.94.